J-S22023-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :            PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| TIMOTHY R. ROBINSON | : |
| | : |
| Appellant | : No. 2929 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 15, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005809-2022

BEFORE:    PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:           **FILED AUGUST 11, 2026**

Timothy R. Robinson ("Robinson") appeals from the judgment of sentence imposed following his guilty pleas to involuntary manslaughter, recklessly endangering another person ("REAP"), and homicide by vehicle while driving under influence[1] ("DUI").

Robinson pleaded guilty to involuntary manslaughter and homicide by vehicle while DUI, both felonies of the second degree, as well as REAP.[2] At the plea hearing, the Commonwealth recited the factual allegations as follows:

> [O]n Monday, March 28, 2022, at approximately 10:55 a.m., [Robinson] was travelling down the 3000 block of Girard Avenue [in Philadelphia] when he struck the rear of [another vehicle driven by] Luis Massiah [("Massiah")] multiple times.

---

[1] **See** 18 Pa.C.S.A. §§ 2504(a), 2705; 75 Pa.C.S.A. § 3735(a)(1)(i).

[2] The REAP conviction was a misdemeanor of the second degree.

[Massiah stopped. Robinson] sped up and [passed] Massiah on the right side.

At this time, [Robinson] jumped a curb [and] struck [a] building[. Robinson's] vehicle flipped over, struck Tysheeda Antrom [("Antrom")] and landed on top of her three-year-old son, [J.J. (the "Victim")].

[The Victim died as a result of blunt impact injuries to the head, neck and torso.]

* * * *

[Robinson made statements that "he had been sober" but "relapsed" and "did a bag of heroin." He] was placed under arrest for DUI. [During a s]earch incident to arrest, officers recovered eight packs of heroin from [Robinson's] pocket.

* * * *

[Robinson] gave a post-***Miranda***[3] statement, admitting that] he was involved in a crash at 30th and Girard Avenue. [Robinson] stated that he was coming from . . . Kensington after purchasing five or six bags of heroin [and] he snorted one of those bags a short time after purchasing it.

[Robinson] ultimately consented to a blood draw[, which showed the presence of fentanyl and] methadone.

N.T., 9/13/24, at 15-17.

On November 15, 2024, the trial court conducted a sentencing hearing.

The court stated it had reviewed the pre-sentence investigation report ("PSI").

The Victim's aunt testified that the Victim "lit up" her life, and that she

felt his absence "every day." N.T., 11/15/24, at 14-15. The Victim's mother,

Antrom, testified about her relationship with the Victim, and stated that she

_____

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

was "mentally messed up" and her "whole life stopped" as a result of the Victim's death. *Id*. at 21. Antrom also described the relationship between her other three children and the Victim, and said the children were "hurting." *Id*. at 22. The Commonwealth argued that if Robinson "got out again[,] something like this [could] happen again, because he was clean for three years[,] relapsed," and made the decision to "get behind the wheels of a car." *Id*. at 30-31.

Robinson argued that he had "a long history of drug use," as well as "a mental health diagnosis of being bipolar." *Id*. at 6. Robinson apologized to the Victim's family, stating that "it wasn't [his] intention to hurt anybody." *Id*. at 33 (unnecessary capitalization omitted). The trial court interjected that it was "ridiculous" to refer to the incident as an accident. *Id*. Robinson then discussed the impact of this incident on his family, including his ailing mother and his recently deceased brother, and again said he was sorry for the "terrible accident." *Id*. at 34-35. The trial court again reprimanded Robinson for calling it an "accident," and reiterated that after buying and using drugs, he drove his car "and took the life of a three-year-old." *Id*. at 35-36.

The trial court noted that the standard guideline range for Robinson's conviction of homicide by vehicle while DUI was thirty-six to forty-eight months' imprisonment, but it carried a mandatory minimum sentence of three

years' imprisonment.[4]  The court imposed four to ten years, which was at the top of the standard range.  The standard guideline range for involuntary manslaughter was forty-eight to sixty-six months' imprisonment.  The trial court imposed four to ten years, at the bottom of this range, to run consecutively.[5]  We note the maximum ten-year terms of both sentences were the statutory maximums.

The trial court cited its considerations for these sentences: Robinson's acceptance of "some responsibility . . . by not putting [the Victim's family] through a trial;" his expression of remorse, although it was "somewhat lacking;" and his rehabilitative needs, which the court addressed by "asking [Robinson] go to therapeutic community to deal with [his] drug and alcohol issues."  N.T., 11/15/24, at 41.  The trial court balanced those factors against the aggravating factors: the "tremendous impact" of the offense on the Victim's family, and the several opportunities Robinson had to address his drug and alcohol issue.  *Id*. at 42.

Robinson filed a timely post-sentence motion, arguing that although the sentence on each count was in the standard range, the trial court's decision to run them consecutively "resulted in a sentence that was beyond the

_____

[4] *See* 75 Pa.C.S.A. § 3735(a)(2) (providing that "[t]he sentencing court shall order a person convicted under paragraph (1)(i) to serve a minimum term of imprisonment of not less than three years").

[5] The trial court imposed no further penalty for REAP.

aggravated range." Motion For Reconsideration of Sentence, 11/15/24, at 2. Robinson stated that the Victim's family's impact statements were extremely emotional. Robinson also argued that the crimes of involuntary manslaughter and homicide by vehicle while DUI do "not describe[e] different criminal conduct [*sic*]." The trial court denied the motion by operation of law.[6]

Robinson did not initially file a notice of appeal, but filed a timely Post Conviction Relief Act[7] petition, requesting reinstatement of his direct appeal rights *nunc pro tunc.* The trial court reinstated Robinson's direct appeal rights. Robinson then filed a timely notice of appeal. He and the trial court have complied with Pa.R.A.P. 1925.

Robinson presents the following issue for our review:

> Did the trial court abuse its discretion in sentencing [Robinson] to an aggregate sentence of 8 to 20 years of incarceration, while running near identical charges of homicide by vehicle while DUI and involuntary manslaughter consecutively with maximum sentences on the top end, did the sentencing court give excessive deference to the victim impact statements of the family of the [Victim], and was there a solitary focus on retribution/revenge that gave no consideration to [Robinson's] age at the time of sentencing and at the time of the offense (approximately 64 years-old) meaning that the sentence is an effective life sentence without adequate justification for mental health and drug abuse history, acceptance of responsibility, and potential for rehabilitation?

_____

[6] In its opinion, trial court acknowledged that at the time, it did not enter an order denying Robinson's motion by operation of law. However, it subsequently entered such an order, on November 20, 2025, during the pendency of this appeal.

[7] **See** 42 Pa.C.S.A. §§ 9541-9546.

- 5 -

Robinson's Brief at 4 (unnecessary capitalization omitted).

Robinson avers that the trial court abused its discretion in imposing consecutive, statutory maximum sentences for near identical charges of homicide by vehicle while DUI and involuntary manslaughter, resulting in an aggregate term of eight to twenty years' incarceration. These claims go to the discretionary aspects of his sentence. We note the applicable standard of review.

> The right to appellate review of the discretionary aspects of a sentence is not absolute and must be considered a petition for permission to appeal." To invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence, an appellant must satisfy a four-part test: (1) the appellant preserved the issue by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth in his brief a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f); and (4) the appellant raises a substantial question for review.

*Commonwealth v. Davis*, 341 A.3d 808, 812 (Pa. Super. 2025) (citations and footnote omitted).

Here, Robinson filed a timely notice of appeal. In addition, Robinson set forth each of his arguments in his Rule 2119(f) statement. However, Robinson waived the following arguments because he did not raise them at the time of sentencing or in his motion for reconsideration: (1) that the trial court had an improper singular focus on retribution; (2) that the trial court did not properly consider his age of sixty-four and his sentence is a *de facto* life sentence; (3)

that the trial court did not properly consider his mental health history, acceptance of responsibility and potential for rehabilitation.

Robinson preserved two issues for our review, by raising them in his motion for reconsideration of sentence: (1) his convictions of homicide by vehicle while DUI and involuntary manslaughter arose "from the same incident" and were "near[ly] identical" charges, as they had "many similar albeit slightly different elements;"[8] and (2) while each sentence was within the sentencing guidelines, the trial court ran the separate sentences consecutively. Robinson's Brief at 7, 10.

_____

[8] To the extent that Robinson concedes that the two offenses do not merge, we agree. *See **Commonwealth v. James***, 297 A.3d 755, 769 (Pa. Super. 2023) (stating that this Court may address sentencing merger *sua sponte*). "No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A. § 9765.

Section 3735(a)(1) of the Vehicle Code provides that a person commits homicide by vehicle while DUI when they "**unintentionally** causes the death of another person as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802." 75 Pa.C.S.A. § 3735(a)(1) (emphasis added). Section 2504(a) of the Crimes Code states: "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a **reckless or grossly negligent** manner, . . . he causes the death of another person." 18 Pa.C.S.A. § 2504(a) (emphasis added).

The *mens rea* for the two offenses differ — "unintentionally' in the homicide by vehicle while DUI statute and "reckless or grossly negligent" in the involuntary manslaughter statute. ***See*** 75 Pa.C.S.A. § 3735(a)(1); 18 Pa.C.S.A. § 2504(a). Thus, we conclude the offenses do not merge for sentencing purposes.

We thus consider whether the above issues raise a substantial question. "A substantial question will be found where an appellant advances a colorable argument that the sentence is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010) (citation omitted). In general, the sentencing court has discretion to impose sentences consecutively or concurrently. *See id*. at 586. However, a defendant may raise a substantial question when the trial court's decision to run consecutive sentences "raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." *Id*. at 587 (footnote omitted).

Here, we determine that Robinson's claim, that his aggregate sentence was excessive because the trial court ran the sentences consecutively, raises a substantial question. *See id*. Because Robinson has raised a substantial question, this Court may proceed to the merits.

The standard of review for a challenge to the discretionary aspects of sentencing is a "manifest abuse of discretion." *Commonwealth v. Bankes*, 286 A.3d 1302, 1307 (Pa. Super. 2022) (citation omitted). A defendant must establish that "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id*. (citation omitted).

Under Section 9781(c) of the Sentencing Code, this Court may vacate the sentence and remand it to the sentencing court only if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

42 Pa.C.S.A. § 9871(c)(1)-(3).

In fashioning a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Further, the sentencing court must consider the sentencing guidelines, and, at the time of sentencing, provide "a statement of the reason or reasons for the sentence imposed." *Id.* When the sentencing court has the benefit of a pre-sentence investigation report, we presume that it "was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Bankes*, 286 A.3d at 1307.

Further, as stated above, it is within a sentencing court's discretion to impose consecutive sentences. *See Mastromarino*, 2 A.3d at 586. This Court "will not disturb consecutive sentences unless the aggregate sentence

is 'grossly disparate' to the defendant's conduct, or 'viscerally appear[s] as patently unreasonable.'" *Bankes*, 286 A.3d at 1310.

After review of the record, we determine that the trial court did not abuse its discretion in imposing the sentences for involuntary manslaughter and vehicle homicide DUI. First, in fashioning Robinson's sentence, the trial court properly considered the required section 9721(b) factors. *See* 42 Pa.C.S.A. § 9721(b). The court considered the protection of the public, stating that people walking on sidewalks cannot be expected to "avoid people like" Robinson. N.T., 11/15/24, at 38. Further, the trial court considered the "tremendous impact" the incident had on the Victim's family. *Id*. In addition, the sentencing court considered Robinson's rehabilitative needs, "asking that [he] go to therapeutic community to deal with" his drug and alcohol issues. *Id*. at 41. The court also stated that the given sentence was "not above the guidelines." *Id*. at 42. Finally, the court stated that it "read both" Robinson's pre-sentence investigation report and mental health reports, and thus we presume it considered all of these mitigating factors. *Id*. at 4; *see also Bankes*, 286 A.3d at 1307.

Second, the aggregate sentence of eight to twenty years is not grossly unreasonable given Robinson's crime. The trial court found that Robinson consumed heroin, operated a motor vehicle, and sped up to pass another vehicle. His actions resulted in the death of a three year-old, and the court found this "horrendous." N.T., 11/15/24, at 39. The court rejected Robinson's

characterization of the incident as an accident, and instead found that he demonstrated "carelessness, recklessness, [and] lack of regard for [his] fellow human beings." *Id*. at. 38. The court also found that Robinson had prior opportunities for help with his drug problem, including an "accelerated misdemeanor program." *Id*. at 42.

For the foregoing reasons, we determine the trial court did not abuse its discretion in imposing sentence. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/11/2026